**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **JEFFREY M. GOEKEN,** | |
| **Plaintiff,** | **8:18CV320** |
| **vs.** | |
| **ANDREW SAUL,**[1] **Commissioner of Social Security,** | **MEMORANDUM AND ORDER** |
| **Defendant.** | |

This matter is before the Court on the Motion for an Order Reversing the Commissioner's Decision, ECF No. 17, filed by Plaintiff Jeffrey M. Goeken, and the Motion to Affirm Commissioner's Decision, ECF No. 20, filed by Defendant Andrew Saul ("Commissioner"). On July 11, 2019, the Court entered an Order holding its decision in abeyance pending the Eighth Circuit's decision in *Thurman v. Comm'r*, No. 18-3451. The Eighth Circuit's decision was issued on June 26, 2020. For the reasons stated below, the Motion for an Order Reversing the Commissioner's Decision will be denied and the Motion to Affirm Commissioner's Decision will be granted.

**PROCEDURAL HISTORY**

Goeken applied for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401, et seq., and supplemental security income benefits under Title

---

[1] Plaintiff originally named Nancy A. Berryhill, Acting Commissioner of Social Security, as the Defendant in this action. Andrew Saul became the Commissioner of Social Security in June 2019, and he has been substituted as a party pursuant to Fed. R. Civ. P. 25(d).

XVI of the Act, 42 U.S.C. § 1381, et seq., on January 19, 2015. Tr. 15.[2] In both applications, Goeken alleged disability beginning June 27, 2014. Tr. 15. His claim was denied initially on June 17, 2015, and again on reconsideration on August 5, 2015. Tr. 15. He requested a hearing, which was held on April 17, 2017. Tr. 15. The Administrative Law Judge (ALJ) issued a written opinion denying benefits on August 10, 2017. Tr. 15-25.

An ALJ follows a five-step sequential analysis to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). The ALJ must continue the analysis until the claimant is found to be "not disabled" at steps one, two, four or five, or is found to be "disabled" at step three or step five. *See* 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a).

Step one requires the ALJ to determine whether the claimant is currently engaged in substantial gainful activity. See 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). The ALJ found that Goeken had not engaged in substantial gainful activity since June 27, 2014, the alleged onset date. Tr. 17-18.

Step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii) & (c); 20 C.F.R. § 416.920(a)(4)(ii) & (c). A "severe impairment" is an impairment or combination of impairments that significantly limits the claimant's ability to do "basic work activities," 20 C.F.R. § 404.1520(a)(4)(ii) & (c), and satisfies the "duration requirement." 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last

---

[2] Pinpoint citations to the transcript of the Administrative Record ("Tr.") shall be to the consecutively numbered pages in the record rather than to the Page ID of the docket.

for a continuous period of at least 12 months."); *see also* 20 C.F.R. § 416.909. Basic work activities include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" "[c]apacities for seeing, hearing, and speaking;" "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1522(b); 20 C.F.R. § 416.922(b). If the claimant cannot prove such an impairment, the ALJ will find that the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). The ALJ found that Goeken had the following severe impairments: intractable seizure disorder, degenerative disc disease of the lumbar and thoracic spines, chronic headache disorder, and obesity. Tr. 18.

Step three requires the ALJ to compare the claimant's impairment or impairments to a list of impairments. *See* 20 C.F.R. § 404.1520(a)(4)(iii), (d); *see also* 20 C.F.R. Part 404, Subpart P, App'x 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926); 20 C.F.R. § 416.920(a)(4)(iii). If the claimant has an impairment "that meets or equals one of [the] listings," the analysis ends and the claimant is found to be "disabled." *See* 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If a claimant does not suffer from a listed impairment or its equivalent, then the analysis proceeds to steps four and five. *See* 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). The ALJ found that Goeken did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 19.

Step four requires the ALJ to consider the claimant's residual functional capacity[3] ("RFC") to determine whether the impairment or impairments prevent the claimant from engaging in "past relevant work." *See* 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f); 20 C.F.R. § 416.920(a)(4)(iv), (e), (f). If the claimant can perform any past relevant work, the ALJ will find the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f); 20 C.F.R. § 416.920(a)(4)(iv), (f). The ALJ found that Goeken had the RFC to perform light work as defined in 20 C.F.R. § 401.1567(b) and § 416.967(b) "except that he can only occasionally climb ramps and stairs, balance, kneel, stoop, crouch, or crawl. He can never perform work that requires climbing of ladders, ropes, or scaffolds; driving motor vehicles; or concentrated exposure to temperature extremes, vibration, loud noise, or workplace hazards such as unprotected heights or moving mechanical parts. Additionally, the claimant is able to perform only low stress work, defined as having only occasional changes in the work setting and requiring no more than occasional decision-making." Tr. 20. The ALJ determined Goeken was unable to perform any past relevant work. Tr. 23.

At step five, the ALJ must determine whether the claimant is able to do any other work considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 416.920(a)(4)(v). The ALJ determined that Goeken was 43 years-old, had a limited education, and was able to communicate in English. Tr. 24. The ALJ also determined that transferability of job skills was not an issue in this case because Goeken's past relevant work was unskilled. Tr. 24.

---

[3] "'Residual functional capacity' is what the claimant is able to do despite limitations caused by all of the claimant's impairments."  *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing 20 C.F.R. § 404.1545(a)).

4

The ALJ then determined that there are jobs that exist in significant numbers in the national economy that Goeken could perform, and, therefore, Goeken was not disabled from June 27, 2014, through the date of the decision, August 10, 2017. Tr. 24-25.

On May 9, 2018, the Appeals Council denied review, and the ALJ's decision stands as the Commissioner's final decision. Tr. 1. On July 7, 2018, Goeken filed a Complaint with this Court for judicial review of the agency decision. Compl., ECF No. 1.

## FACTUAL BACKGROUND

### I.    Administrative Hearing Testimony

On April 17, 2017, the ALJ held Goeken's administrative hearing. Tr. 30. Timothy Cunningham appeared as Goeken's attorney. Tr. 30. Goeken brought calendars for the prior several years listing his seizures. The ALJ said: "I don't think it will be necessary to admit the calendars into evidence, but if you feel like you still need a summary after the hearing today, you can feel free to submit . . .  But, I think we'll probably get it all down." Tr. 34. Cunningham explained in his opening statement that Goeken's primary impairment was seizures, and Cunningham said, "the evidence that's overwhelming is the seizure evidence." Tr. 36. Goeken discussed his calendars with the ALJ, specifically explaining "I don't know off the top of my head what days they were" and that he was relying on the calendar to provide the number of seizures per month. Tr. 37. Goeken told the ALJ the number of seizures he had per month based on his calendars for 2015, 2016 and 2017. Tr. 38. Goeken explained that he first began documenting his seizures in January 2015, and the calendar entries were made the same day the seizures occurred, as much as possible. Tr. 38-39. Referring to his seizure calendar, Goeken testified that he had experienced the following number of seizures each month:

5

| Month | 2015 | 2016 | 2017 |
|-------|------|------|------|
| January | 1 | 3 | 4 |
| February | 1 | 1 | 1 |
| March | 1 | 5 | 8 |
| April | 1 | 3 | 5 |
| May | 0 | 1 | |
| June | 2 | 1 | |
| July | 2 | 3 | |
| August | 4 | 2 | |
| September | 2 | 2 | |
| October | 9 | 2 | |
| November | 1 | 2 | |
| December | 3 | 3 | |

Tr. 38.

Goeken said the following factors triggered the seizures: "Stress does, some lights, flashing lights like TV screen or computer screens, they cause them. Sometimes certain smells will cause them." Tr. 39. His seizures typically lasted three to five minutes. Tr. 40. It took about 15 minutes after a seizure for Goeken to be able to talk again, and he was "pretty much wiped out for the rest of the day." Tr. 40.

Goeken explained that bright lights could cause him to suffer migraines, for which he would usually go into a dark room and lie down. Tr. 41. Goeken testified to being able to sit for only about two to three hours at a time and being able to stand or walk for only about 10 minutes at a time due to back pain. Tr. 43. Goeken also described his anxiety symptoms for the ALJ. Tr. 46.

Goeken explained he was not a TV person as "the flashing of the screen causes seizures." Tr. 48. Goeken said his current seizure medication caused side effects of drowsiness, tremors, and weight gain. Tr. 49. He said he had lost jobs due to his seizures. Tr. 50-51.

6

The ALJ's first hypothetical question limited the claimant to medium exertional level work and did not include all the limitations in the eventual RFC. *See* Tr. 53-54. The ALJ's second hypothetical question incorporated the limitations from the first hypothetical and further limited the claimant to light exertional work and included an additional limitation of "only occasional changes in the workplace setting, and requiring no more than occasional decision-making." Tr. 55. The second hypothetical resembled the eventual RFC and led to the vocational expert testimony the ALJ relied on to deny benefits. *See* Tr. 55-56. The ALJ confirmed with the vocational expert that if the claimant missed at least three workdays per month he was precluded from all work. Tr. 56.

## II.    Relevant Medical Evidence

On June 11, 2013, Goeken told Dr. Manjula Tella, M.D., his neurologist at Fremont Neurology, that he was having seizures "every other week or so." Tr. 359. He thought he could have a concussion from his last seizure. *See* Tr. 359. Goeken said his back pain and seizures had been bothering him more, and he also felt tremulous and had problems with memory loss. Tr. 359. Dr. Tella adjusted Goeken's medications and planned to obtain an EEG and CT scan of his brain. Tr. 360. On June 17, 2013, Dr. Tella said the CT scan had shown "a vascular abnormality, right parietal lobe, with some focal atrophy that could be contributing to his seizure disorder." Tr. 357. Dr. Tella noted: "His EEG also revealed some right temporoparietal sharp wave activity." Tr. 357. Goeken's headaches continued. Tr. 357. He also felt overwhelmed. Tr. 357.

Goeken's alleged onset date was June 27, 2014.

On January 15, 2015, Goeken returned to Dr. Tella. Tr. 354. Goeken said his most recent seizure "occurred days ago" without known precipitating factors. Tr. 354.   His

headaches were moderate, brought on by stress, and worsening. Tr. 354. Dr. Tella ordered an MRI of Goeken's lumbar spine and instructed him not to drive or operate heavy machinery until further notice. Tr. 356.

On January 20, 2015, Goeken applied for disability insurance benefits. Tr. 209. On January 22, 2015, an MRI was performed on Goeken's lumbar spine. Tr. 328.

On March 20, 2015, Goeken saw Dr. Michael Yung, M.D., for a consultae examination. Tr. 334. On March 20, 2015, Goeken also saw Dr. Jerry Authier, Ph.D., for a psychological consultative examination. Tr. 343.

On April 6, 2015, Goeken returned to Dr. Tella. Tr. 349. Goeken said his most recent seizure was months ago. Tr. 349. He reported headaches, back pain, and anxiety. Tr. 349. He said the headaches were brought on by stress, flashing lights, and odors. Tr. 349. Dr. Tella prescribed Risperdal for Goeken's anxiety. Tr. 351.

On June 16, 2015, the medical and psychological consultants provided opinions with limited explanation for their findings. *See* Tr. 74-77.

On July 16, 2015, Goeken sought treatment in a hospital emergency room for left ankle pain following a seizure in a Walmart on July 1, 2015. Tr. 390.

On July 29, 2015, the medical and psychological consultants on reconsideration provided opinions with limited explanation for their findings. *See* Tr. 106-10.

On August 19, 2015, Goeken returned to Dr. Tella, reporting that he had several seizures each week over the past months, with the most recent seizure weeks ago. Tr. 398. Dr. Tella increased Goeken's Risperdal, prescribed Fycompa, and refilled Goeken's back pain medication. Tr. 400. In Goeken's disability report of August 26, 2015, he complained that his back pain was worse. Tr. 280.

8

On February 18, 2016, Goeken told Dr. Tella that he was having several seizures each week with the most recent occurring several days ago. Tr. 407. Goeken also reported significant back pain. Tr. 407. On February 15, 2017, Dr. Tella noted Goeken reported "having had multiple seizures over the past 1 year" with the most recent seizure occurring "approximately days ago." Tr. 411. Goeken also complained of intense back pain. Tr. 411. Dr. Tella documented that Goeken's seizures were well controlled.[4] Tr. 411.

### III.    Treating and Examining Opinions

On March 20, 2015, Goeken saw Dr. Michael Yung, M.D., for a consultative examination. Tr. 334. Goeken said he was having two to three seizures a month. Tr. 334. He also said he had two to three migraines a month. Tr. 334. He also described his back pain. Tr. 335. Dr. Yung noted he had not been provided medical documentation of the frequency of seizures. Tr. 338. Given Goeken's report that they were occurring two to three times per month, Dr. Yung opined Goeken would likely miss work two to three times per month and could have difficulty driving to certain jobs. Tr. 339. Dr. Yung opined that migraines could cause Goeken to miss an additional two to three days of work per month. Tr. 339. Dr. Yung opined concerning Goeken's back pain: "Overall, this may cause mild limitation in his ability to tolerate standing for long periods of time and walking for long distances, however, should not be a significant limitation to employment with such things as a desk job." Tr. 339.

On March 20, 2015, Goeken also saw Dr. Jerry Authier, Ph.D., for a psychological consultative examination. Tr. 343. Goeken said that he had dropped out of high school

---

[4] The exact language in Dr. Tella's report is that Goeken "presents for a follow-up of well controlled complete partial seizures and simple partial motor seizures." Tr. 411.

and most of his work had been in food service. Tr. 343. He had tried to join the military but could not get in due to his epilepsy. Tr. 343. Dr. Authier opined that if Goeken were to receive appropriate medications and pursue ongoing counseling for anxiety and depression, "his psychiatric problems would not interfere with his ability to obtain and sustain gainful employment." Tr. 345.

On April 6, 2015, Dr. Tella provided opinions as to Goeken's limitations as a result of his seizures. *See* Tr. 365-68. Dr. Tella opined Goeken had two to three seizures a month. Tr. 365. Dr. Tella said Goeken would need unscheduled breaks on an unpredictable basis. Tr. 368. Dr. Tella said he would need "5-6 h[ou]rs break" after his seizures. Tr. 368. Considering all his impairments and treatment, Dr. Tella expected Goeken to miss more than four days of work per month. Tr. 368.

On April 13, 2017, Dr. Tella stated in a short letter that Goeken had ongoing "intractable seizure disorder with breakthrough seizures, migraine headaches, chronic low back pain and superimposed anxiety and depression." Tr. 415. Dr. Tella said the limitations she provided in April 2015 "still remain as is." Tr. 415.

## STANDARD OF REVIEW

"When considering whether the ALJ properly denied social security benefits, [the Court] determine[s] whether the decision is based on legal error, and whether the findings of fact are supported by substantial evidence in the record as a whole." *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (quoting *Lowe*, 226 F.3d at 971). "Substantial evidence is less than a preponderance but enough that a reasonable mind might accept as adequate to support the conclusion." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) (citation omitted). A decision supported by substantial evidence may not be reversed,

10

"even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citation omitted). Nevertheless, the Court's "review extends beyond examining the record to find substantial evidence in support of the ALJ's decision." *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010) (quoting *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007)). The Court must "also consider evidence in the record that fairly detracts from that decision." *Id.* (quoting *Cox*, 495 F.3d at 617).

The Court also must determine whether the Commissioner's decision "is based on legal error." *Collins*, 648 F.3d at 871 (quoting *Lowe*, 226 F.3d 971). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Id.* (citing *Brueggemann v. Barnhart*, 348 F.3d 689, 692 (8th Cir. 2003); *Nettles v. Schweiker*, 714 F.2d 833, 836 (8th Cir. 1983)). No deference is owed to the Commissioner's legal conclusions. *Brueggemann*, 348 F.3d at 692 (stating that allegations of legal error are reviewed de novo).

## DISCUSSION

Goeken contends the ALJ failed to provide good reasons for the weight afforded to the opinions of Goeken's treating neurologist Dr. Tella, the opinions of the consultative examiner Dr. Yung, and Goeken's subjective complaints concerning the frequency and severity of his seizures. Pl. Br., ECF No. 18, Page ID 470. He asserts these errors leave the ALJ's decision unsupported by substantial evidence on the record as a whole. *Id.*

Goeken also argues that the ALJ's decision should be reversed because the ALJ was an inferior officer not appointed as required by the Appointments Clause. The

11

Commissioner argues that Goeken forfeited his Appointments Clause challenge by failing to assert it during the administrative process.

## I. Weight given to Goeken's subjective complaints, and the opinions of Dr. Tella and Dr. Yung.

Goeken claims that had the ALJ properly credited his subjective complaints and the opinions of Dr. Tella and Dr. Yung, the ALJ would have determined Goeken suffers from seizures 2-3 times per month, is unable to work on days when seizures occur, and these seizures, in combination with his other impairments including migraines, produce limitations that preclude employment. In essence, Goeken asserts that the ALJ's RFC assessment does not account for Goeken's attendance limitations that would preclude employment. In the alternative, Goeken argues that if the Court finds the opinion of Goeken's treating physician not controlling, the case should be remanded to the agency for additional evidence on the frequency of Goeken's seizures.

The Commissioner argues the ALJ properly discounted Goeken's subjective allegations concerning the frequency of his seizures as well as Dr. Tella's and Dr. Yung's opinions which were based on Goeken's discredited allegations.

"A claimant's RFC is what a [claimant] can do despite his or her limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing 20 C.F.R. § 404.1545). "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Id.* (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016). "The RFC must (1) give appropriate consideration to all of [the claimant's] impairments, and (2) be based on competent medical evidence establishing the physical and mental activity that the claimant can

perform in a work setting." *Mabry*, 815 F.3d 390 (quoting *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). "An ALJ may also consider the claimant's subjective statements about his capabilities." *Id.* (citing *Partee*, 638 F.3d at 865). "The RFC determination 'is ultimately an administrative determination reserved to the Commissioner.'" *Id.* (quoting *Cox*, 495 F.3d at 619–20).

"Before determining a claimant's RFC, the ALJ first must evaluate the claimant's credibility." *Pearsall*, 274 F.3d at 1217–18. When evaluating a claimant's subjective complaints of pain, the ALJ must consider the "objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529(c)). "Another factor to be considered is the absence of objective medical evidence to support the complaints, although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence." *Halverson v. Astrue*, 600 F.3d 922, 931–32 (8th Cir. 2010) (citing *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008)). An ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole. *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999); *see also Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016) (discounting

claimant's credibility due to contradictory statements made to treating physicians); *Samons v. Astrue*, 497 F.3d 813, 821 (8th Cir. 2007) ("The ALJ also noted contradictions between her hearing testimony and her statements as recorded in her medical records.") "[A]n ALJ need not explicitly discuss each *Polaski* factor." *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (quoting *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005)).

"An ALJ who rejects such [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Id.* (quoting *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000)). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Id.* (quoting *Pearsall*, 274 F.3d at 1218). The Court defers to the ALJ's evaluation of a claimant's credibility "provided that this determination is supported by 'good reasons and substantial evidence.'" *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014) (quoting *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006)).

The ALJ considered Goeken's testimony with respect to his seizures, migraines, and back pain and concluded "I find the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 21.

With respect to Goeken's seizures, the ALJ pointed out that there are inconsistencies between Goeken's reports to medical professionals and his testimony at trial as to the frequency of his seizures. Tr. 21. Specifically, Goeken testified to having one seizure per month from January through April 2015, Tr. 38, but Dr. Tella's records

14

from Goeken's visit on April 6, 2015, state "most recent episode occurred months ago," Tr. 349. Goeken then reported to Dr. Yung on March 20, 2015, that he had approximately two to three seizures a month. Tr. 334. On August 19, 2015, Goeken reported having several seizures each week over the past months, Tr. 398, yet he testified he had only four seizures in August 2015, and two seizures in July 2015. Tr. 38. On February 18, 2016, Goeken reported to Dr. Tella that he was having "several seizures each week over the past days" with the most recent occurring "several days ago," Tr. 407, but testified that his seizure log showed only one seizure in February 2016, Tr. 38. The ALJ states that "[g]iven these inconsistencies, [Goeken's] testimony and self-reports about his seizures would not seem to be a reliable basis upon which to derive the true limitations imposed by his seizure disorder." Tr. 21.

On all but one occasion, the seizures recorded on Goeken's seizure calendar were fewer in number than those he reported to Dr. Tella and Dr. Yung. Using the lower number, one seizure is subtracted from the 28-month total, leaving an average of approximately 2.5 seizures per month. Fully crediting Goeken's testimony regarding his seizures, in 10 out of 28 months Goeken experienced seizures on fewer than two days per month. In six other months, he experienced only two seizures per month.

The ALJ stated that "[o]ther than [Goeken's] self-reports, the only evidence as to the frequency of the claimant's seizures are the opinions of [Dr. Tella], which are given little weight . . . ."[5] Further, the ALJ noted that Goeken's seizures were never witnessed by medical personnel and he never sought emergency medical care immediately after a

---

[5] The ALJ's reasons for discrediting Dr. Tella's opinions will be discussed separately.

seizure. Thus, the ALJ concluded there was an absence of objective information about the frequency or characteristics of the seizures in Goeken's medical records. Tr. 21. The lack of objective medical evidence combined with the inconsistencies between Goeken's reports to medical providers and his testimony provided good cause for discrediting Goeken's subjective complaints.

The ALJ also noted there were no doctor's notes documenting Goeken's absences from work due to seizures and Dr. Tella's notes indicated that the seizure disorder was "partially controlled with medication since August 2015 and "well controlled" since 2017. Tr. 21, 22. When considering a physician's notes that a claimant is doing well, the notes must be considered in the light of what is considered "doing well" for a claimant with the medical condition. *See Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (stating that an ALJ may have "relied too heavily on indications in the medical record that [the claimant] was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity"). Even assuming, without deciding, that a patient who has a history of intractable seizure disorder may be considered to be well controlled despite having multiple seizures per month, this alleged error would not require remand because, as stated above, the ALJ gave other good reasons supported by substantial evidence in the record to discount Goeken's subjective complaints. *Dodson v. Astrue*, 346 F. App'x 123, 124 (8th Cir. 2009) ("Even assuming (without deciding) that the ALJ erred in relying on Dodson's reported daily activities as a reason to discredit her . . . the ALJ gave other valid and supported reasons for discounting the extent of Dodson's subjective complaints."). Thus, the ALJ

did not err in weighing Goeken's subjective complaints concerning the frequency and severity of his seizures.

### B. Opinions of Goeken's Treating Neurologist Dr. Tella

"Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citing 20 C.F.R. § 404.1527(c)(2)). If "a treating source's medical opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," it must be given controlling weight. 20 C.F.R. § 404.1527(c)(2).[6] When a treating source's opinion is not given controlling weight the factors contained in 20 C.F.R. § 404.1527(c)(2)(i) and (c)(2)(ii), and 20 C.F.R. § 404.1527(c)(3)-(6), are applied to determine the weight to give the medical opinion. *Id.* The factors to be considered are 1) length of the treatment relationship, 2) nature and extent of treatment relationship, 3) supportability, 4) consistency, 5) specialization, and 6) other factors. 20 C.F.R. § 404.1527. "[T]he ALJ must 'give good reasons' to explain the weight given the treating physician's opinion." *Anderson*, 696 F.3d at 793 (quoting 20 C.F.R. § 404.1527(c)(2)). An ALJ may discount an opinion based on a claimant's subjective complaints, rather than objective medical evidence, and may further discount or disregard any conclusions based on the claimant's discredited

---

[6] An application for benefits is considered filed on the day it is received by an employee at any social security office. 20 C.F.R. § 416.325; 20 C.F.R. § 404.614. Goeken filed for benefits on January 19, 2015. Tr. 65, 82. The standards set forth in 20 C.F.R. § 404.1527 apply for evaluating opinion evidence for claims filed before March 27, 2017.

subjective complaints. *Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (citations omitted).

On April 6, 2015, Dr. Tella completed a seizure medical source statement in which she opined on Goeken's work restrictions. Tr. 365-68. On April 13, 2017, Dr. Tella said Goeken had "intractable seizure disorder with breakthrough seizures, migraine headaches, chronic low back pain and superimposed anxiety and depression." She confirmed that the limitations stated in her April 2015, resource statement "still remains as is." Tr. 415. The ALJ addressed Dr. Tella's opinions that Goeken had 2-3 seizures per month; was unable to work for the remainder of the day after having a seizure; was incapable of even low-stress work due to the possibility of precipitating a seizure; could not stand or walk for more than 2 hours in an 8 hour day, and would miss more than 4 days of work per month. Tr. 23.

The ALJ noted that Dr. Tella had a lengthy treatment record but went on to state that "the extreme limitations she imposed are not consistent with the clinical findings recorded in her treatment notes, which were largely normal, or with her statement in February 2017 that the claimant's seizure disorder is well-controlled." Tr. 23. The ALJ also stated that

> It is also important to note that Dr. Tella's statements regarding the frequency and residual effects of [Goeken's] seizures must have been based on [Goeken's] subjective reports, as her treatment notes do not indicate that she has ever witnessed one of [Goeken's] seizures or that she has treated [Goeken] while in a postictal state. Dr. Tella's opinions are therefore given little weight.

Tr. 23.

To the extent Dr. Tella's opinion suggests Goeken would need to miss any additional days for migraines or medical appointments, this suggestion was properly

rejected by the ALJ as it was based on the claimant's subjective complaints, rather than objective medical evidence. As stated, Goeken's subjective complaints regarding migraines were discredited by the ALJ. Also, there is no evidence of Goeken's need to have medical appointments during work hours. *See Gregory v. Comm'r Soc. Sec.*, 742 Fed. Appx. 152, 156 (8th Cir. 2018) ("the record is unclear why [the plaintiff] would need to miss an entire day of work to have his blood tested"); *see also Mullin v. Colvin*, No. 14-3217-CV-S-REL-SSA, 2015 WL 5096028, at *14 (W.D. Mo. Aug. 27, 2015) ("there is no evidence that plaintiff would be unable to schedule multiple medical appointments on the same day or schedule appointments before or after her normal work hours"). Thus, the ALJ properly discredited the need for more absences than those needed due to seizures.

Dr. Tella's diagnosis of a seizure disorder is well-supported by medically acceptable clinical and laboratory diagnostic techniques completed in 2013 and is not inconsistent with the other substantial evidence in record. Tr. 357. The ALJ properly gave it controlling weight. Thus, the only question is whether the ALJ properly discredited Dr. Tella's opinion that Goeken had seizures 2-3 days per month which would preclude him from working.

The ALJ may discount an opinion based largely on a claimant's subjective complaints, rather than objective medical evidence, and may disregard any conclusions based on the claimant's discredited subjective complaints. See *Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (citing *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007; *Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996)). As noted by the ALJ, there is no mention in Dr. Tella's reports that she witnessed one of Goeken's seizures or treated him while he was in a postictal state. Dr. Tella's opinions on the frequency and severity of

Goeken's seizures appear to have been based on his subjective complaints, rather than objective medical evidence. Thus, the ALJ did not err in discounting Dr. Tella's opinion. To the extent that Goeken's subjective complaints were properly discredited, the ALJ did not err in disregarding any conclusion based on those same complaints.

Goeken asserts that the ALJ erred in relying on Dr. Tella's statement that Goeken's seizure disorder was "well-controlled". He further argues that the ALJ should have contacted Dr. Tella for clarification. The Commissioner argues Goeken "fails to explain how a disabling condition resulting in two to three seizures a month could reasonably be characterized as 'well controlled.'" Def. Br., ECF No. 21, Page ID 512. As stated, with respect to Goeken's subjective complaints, when considering a physician's notes that a claimant is doing well, these notes must be considered in the light of what is considered doing well for a claimant with the medical condition. *See Hutsell*, 259 F.3d at 712. Again, assuming, without deciding, that a patient who has a history of intractable seizure disorder may be considered to be well controlled despite having multiple seizures per month, remand is not required because the ALJ gave other good reasons supported by substantial evidence in the record to discount Goeken's subjective complaints. *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) ("Since these reasons are sufficient to support the ALJ's decision to discount the opinion, we need not discuss the ALJ's other reasons for doing so"). Thus, the ALJ did not err in the weight given to Dr. Tella's opinions.

### C. Opinions of Consultative Examiner Dr. Yung

Dr. Yung is a consultative examiner who examined Goeken on at least one occasion. Thus, the weight to be given to his opinion is determined by the factors listed under 20 C.F.R. § 404.1527(c). As stated, with respect to Dr. Tella's opinion, an ALJ may

discount an opinion based on a claimant's subjective complaints, rather than objective medical evidence, and may further discount or disregard any conclusions based on the claimant's discredited subjective complaints. *Cline*, 771 F.3d at 1104 (citation omitted).

On March 20, 2015, Goeken saw Dr. Yung for a consultative examination. Tr. 334. Goeken reported to Dr. Yung that he had 2-3 grand mal seizures per month and was unable to do anything for the rest of the day. Tr. 338. Based on Goeken's representation, Dr. Yung opined that "[o]verall, the seizures would likely cause [Goeken] to miss work approximately two to three times per month . . . ." Tr. 339. Dr. Yung also discussed Goeken's migraines, stating, "Per the claimant's reports [his migraines] are often associated with seizures; severe symptoms, require[ing] rest in a darkroom . . . Overall, these may cause him to miss work again approximately two to three time per month." Tr. 339. Dr. Yung also discussed Goeken's back pain. *Id.*

The ALJ stated that he gave great weight to Dr. Yung's opinion, except for the portion of his opinion regarding absences from work because there was "absolutely no medical evidence to support Dr. Yung's opinion that [Goeken] would miss 2-3 days of work per month." Tr. 23. The ALJ gave no further explanation for not crediting this portion of Dr. Yung's opinion.

As noted in Dr. Yung's report, he relied on Goeken's reports of seizure frequency and "[n]one of the information forwarded shows any medical documentation of the frequency of seizures." Tr. 338. Despite Goeken reporting to Dr. Yung on March 20, 2015, that he had 2-3 seizures per month, Tr. 338, Goeken testified that in 2015, he had only one seizure per month for the months of January, February, and March, Tr. 38. With respect to absences due to migraines, Dr. Yung's report made it clear that he relied on

21

Goeken's subjective complaints regarding migraines, tr. 338, and these subjective complaints were properly discredited by the ALJ due to Goeken's failure to receive regular treatment and medication, Tr. 22. Goeken's subjective complaints regarding his back pain were also discounted due to a lack of medical intervention, except for a single pain medication, and medical evidence showing only mild or moderate back problems.

Thus, because Dr. Yung's opinion was based on Goeken's subjective complaints as opposed to objective medical evidence, the ALJ did not err in the weight given to the opinion.

*D. Failure to Develop the Record.*

Goeken argues that if the ALJ chose to reject the available evidence as to the frequency and severity or Goeken's seizures the ALJ should have further developed the record. Goeken suggest the ALJ could have contracted Dr. Tella to find out if she ever witnessed one of Goeken's seizures or witnessed him in a postictal state. Goeken argues that on remand Dr. Yung, Dr. Tella, or another consultative examiner could be contacted to fully develop the record as to the frequency and severity of Geoken's seizures.

The ALJ has a duty to fairly and fully develop the record, independent of the claimant's burden of proof. *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 824 (8th Cir. 2008). An ALJ should recontact a treating or consulting physician if a critical issue is undeveloped and should order consultative exams if the medical records do not provide enough medical evidence to determine whether the claimant is disabled. *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (citations omitted); *see also Tellez v. Barnhart*, 403 F.3d 953, 956–58 (8th Cir. 2005) (rejecting argument that ALJ failed to fully and fairly develop the record where there was no indication that the ALJ felt unable to make RFC

assessment). "[T]he ALJ is under no duty to provide continuing medical treatment for claimant," despite the duty to develop the record fully. *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003)).

The duty to develop the record does not require an ALJ to function as a plaintiff's attorney; rather, the ALJ is only responsible for developing a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830–31 (8th Cir.1994). There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Mouser*, 545 F.3d at 639 (citation omitted). "[R]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial.*" Haley v. Massanari*, 258 F.3d 742, 749–50 (8th Cir.2001).

Goeken began treatment with Dr. Tella in approximately 1995 and saw her approximately once every six months. Tr. 49, 237. Goeken was on multiple medications. *Id.* On April 22, 2015, Dr. Tella's records were requested from June 2013 forward, Tr. 361, and on July 15, 2015, a request for updated records was made, Tr. 371. The record contains Dr. Tella's progress notes for a visit as late as February 15, 2017, as well as her recommendation dated April 13, 2017. Tr. 411, 415. None of Dr. Tella's records or the report of Dr. Yung indicates that Goeken had a seizure during the appointment or was in a postictal state. Dr. Tella's progress notes, after Goeken's alleged onset date of June 27, 2014, refer to his most recent seizure as being days, weeks, or months ago. See Tr. 349, 354, 398, 407, 411. Evidence regarding Goeken's seizures before his alleged onset date is not likely to be helpful in determining the frequency of his current seizures. Thus, the ALJ did not err by not contacting Dr. Yung or Dr. Tella to inquire about Goeken's seizure frequency or severity.

Goeken relies on *Tate* in support of his argument that the ALJ should have developed the record further with additional testing or opinions. In *Tate*, the ALJ rejected Tate's subjective reports of pain because of a lack of objective medical findings, his poor work record, his daily activities, the fact that he could control his seizures with medication, the fact that he did not seek medical treatment, and a finding that he exaggerated his symptoms. 167 F.3d at 1196. The Eighth Circuit remanded the case to the Social Security Administration stating "The ALJ should develop the record more fully to better ascertain the nature and severity of Tate's seizures, and to determine whether the seizures may be controlled by medication." *Id.* at 1199. However, in *Tate* the examining neurologist specifically recommended further testing, *id.* at 1198, and nothing in the Eighth Circuit's decision indicated Tate made inconsistent statements regarding the frequency of his seizures. Here, the medical opinions based on Goeken's subjective complaints were discounted due, in part, to Goeken's own inconsistent reporting of seizure frequency; no further testing was recommended; and Goeken's own seizure calendars showed he often experienced only one or two seizures per month. Thus, the ALJ was not required to seek additional consultative examinations.

Goeken also argues the ALJ should have asked him to submit attendance records from his prior employment. On September 1, 2015, the Social Security Administration sent Goeken a letter specifically informing him "You are required to inform us about or submit all evidence known to you that related to whether or not you are blind or disabled." Tr. 160. On October 2, 2017, after the ALJ's decision, the Social Security Administration sent a correspondence to Goeken's counsel informing him that the request for review was received. Tr. 7. The correspondence stated "We consider additional evidence that you

24

show is new, material, and relates to the period on or before the date of the hearing decision . . . . You must show good cause for why you missed informing us about it or submitting it earlier." Tr. 7. Goeken has not argued he was prevented from producing attendance records. The ALJ's decision noted that Goeken was not able to perform his past relevant work, which included work in the fast-food industry, Tr. 23-24, and Goeken's work attempts after the alleged onset date were as a fast-food worker, Tr. 242-45. Thus, Goeken has not demonstrated that the ALJ's failure to request the attendance records was unfair or prejudicial. *See Haley*, 258 F.3d at 750 ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial . . . [claimant] has made no such showing").

The Court concludes the ALJ did not err in the weight given to opinions of Dr. Tella or Dr. Yung or to Goeken's subjective complaints; the ALJ's decision was supported by substantial evidence; and any underdevelopment of the record was not unfair or prejudicial.

## II. Constitutionality of the ALJ's appointment as an inferior officer.

"As of 2017, [ALJs] in the Social Security Administration [(SSA)] were not appointed by the head of the agency, but rather by lower-level officials." *Davis v. Saul*, No. 18-3422, 2020 WL 3479626, at *1 (8th Cir. June 26, 2020). On June 21, 2018, the Supreme Court decided that administrative law judges of the Securities and Exchange Commission are "Officers of the United States" who must be appointed by the President, a court of law, or a head of a department. *Lucia v. SEC*, —— U.S. ——, 138 S. Ct. 2044, 2051, 2055 (2018). The Court stated that "one who makes a timely challenge to the

constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." *Id.* at 2055 (internal quotation and citation omitted).

Goeken argues that the ALJ that decided his case was an inferior officer that was not properly appointed under the Appointments Clause, which warrants the ALJ's denial of benefits be vacated and Goeken's claim remanded for a new hearing before a new, constitutionally appointed, ALJ. Pl. Br., ECF No. 18, Page ID 484. The Commissioner argues that because Goeken failed to raise his Appointments Clause challenge at any point in the administrative process his challenge is untimely, and he has forfeited his Appointments Clause claim. Def. Br., ECF No. 21, Page ID 526. Goeken argues that exhaustion of his Appointments Clause argument was not required and would have been futile. Pl. Br., ECF No. 18, Page ID 487-88.

The Eighth Circuit recently addressed the issue of whether failure to raise an Appointments Clause challenge before the SSA resulted in forfeiture. *Davis*, 2020 WL 3479626, at *1. In *Davis*, the claimants argued that "constitutional claims need not be exhausted, that exhaustion of this particular constitutional challenge would have been futile, and that the court should exercise its discretion to waive any applicable exhaustion requirement." *Id.* at *3. The Eighth Circuit concluded that exhaustion was required, and this was not "'one of those rare cases in which we should exercise our discretion' to consider a non-exhausted claim." *Id.* (quoting *Freytag v. Comm'r*, 501 U.S. 868, 879 (1991)). The court also rejected the futility argument stating

> Repetition of [an] objection . . . might lead to a change of policy, or, if it did not, the [agency] would at least be put on notice of the accumulating risk of wholesale reversals being incurred by its persistence. *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952). Even if an individual ALJ was powerless to address the constitutionality of her appointment, the

26

> agency head—alerted to the issue by claimants in the adjudicatory process—could have taken steps through ratification or new appointments to address the objection.

*Id.* (alterations in original). Other circuit courts have disagreed on whether exhaustion of the Appointments Clause issue before the SSA is required. *Compare Carr v. Comm'r*, 961 F.3d 1267, 1275-76 (10th Cir. 2020) (exhaustion required), *with Cirko v. Comm'r*, 948 F.3d 148, 159 (3d Cir. 2020) (exhaustion not required).

Like the claimants in *Davis*, Goeken did not present his Appointments Clause claim either before the ALJ or the Appeals Council. Goeken attempts to distinguish his case from prior cases by pointing out that EM-18003[7] was effective at the time the Appeals Council denied review. Goeken also argues that "[n]o one in the Social Security Administration had any power to correct the Appointments Clause issue due to Ms. Berryhill's lapse of authority spanning at least mid-November of 2017 until shortly before the Appeals Council denied review. Pl. Br., ECF No. 18, Page ID 488. Another court in the Eighth Circuit has already considered and rejected similar arguments. *Wygle v. Saul*, No. 18-CV-3049-LTS, 2020 WL 3120352, at *14 (N.D. Iowa Feb. 27, 2020), *adopted by*, No. C18-3049-LTS, 2020 WL 1286211 (N.D. Iowa Mar. 18, 2020) ("although Claimant

---

[7] On January 30, 2018, the agency's Office of General Counsel issued an emergency measure warning ALJs that they might receive Appointments Clause challenges and instructing them not to "discuss or make any findings related to the Appointments Clause issue," because the "SSA lacks the authority to finally decide constitutional issues such as these." Soc. Sec. Admin., EM-18003*: Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process* (2018). The agency directed the ALJs to acknowledge the issue when raised. *Id.*

On June 25, 2018, the SSA's Office of Hearing Operations issued a revised emergency measure. Soc. Sec. Admin., EM-18003 REV: *Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process* – UPDATE (2018). This measure continued to instruct ALJs to acknowledge, but not to address, challenges based on the Appointments Clause. *Id.* The Appeals Council was instructed not to "acknowledge, make findings related to, or otherwise discuss the Appointments Clause issue." *Id.*

argues that raising the issue during the administrative process would have been futile because Social Security EM-18003 prevented the ALJ from addressing the issue . . . nothing stopped Claimant from raising the issue during the administrative process and preserving it for appeal"). This Court similarly finds it without merit.

Goeken's hearing was held on April 17, 2017, and the ALJ's decision was issued on August 10, 2017. Tr. 15, 25. EM-18003 was not in effect at the time of the hearing or the ALJ's decision but was in effect at the time of the Appeals Council decision dated May 9, 2018. *See* Tr. 1. Nothing contained in EM-18003 prevented Goeken from raising the Appointments Clause challenge to the ALJ or the Appeals Council. The Court concludes that Goeken forfeited his Appointments Clause challenge by failing to raise it during his administrative proceedings.

**CONCLUSION**

For the reasons stated above, the Motion for an Order Reversing Commissioner's Decision, ECF No. 17, will be denied, and the Motion to Affirm Commissioner's Decision, ECF No. 20, will be granted. Accordingly,

IT IS ORDERED:

1. The Motion for an Order Reversing Commissioner's Decision, ECF No. 17, filed by Plaintiff Jeffrey M. Goeken, is denied;

2. The Motion to Affirm Commissioner's Decision, ECF No. 20, filed by Defendant Andrew Saul, is granted;

3. The Commissioner's decision is affirmed;

4. The appeal is denied; and

5. A separate judgment will be entered.

Dated this 27th day of July 2020.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge